**O'BRIEN et al.**

v.

**PORT LAWRENCE TITLE AND TRUST COMPANY, Trustee, et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI96–3379.

Decided May 13, 1997.

*Bugbee & Conkle, Tybo A. Wilhelms,* and *Richard L. Johnson,* for plaintiffs.

*Eastman & Smith, Ltd.* and *James F. Nooney,* for defendants Port Lawrence Title and Trust Company and Independent Investments, Inc.

*Spengler Nathanson* and *David G. Wise,* for defendant MedCorp, Inc.

RUTH ANN FRANKS, Judge.

This cause is before the court upon cross-motions for summary judgment filed by defendants, Port Lawrence Title and Trust Company and Independent Investments, Inc.[1] and the plaintiffs Lori B. and Douglas S. O'Brien (collectively referred to as "plaintiffs" or "the O'Briens"). Upon careful consideration of the pleadings, memoranda, and oral arguments of counsel, competent evidence, and the applicable law, the court denies defendants' motion for summary judgment and grants plaintiffs' motion.

## I. FACTS

The facts pertinent to this quiet title action are as follows. On or about March 13, 1992, Mrs. O'Brien took title to two parcels of real property known as 4016 and 4018 Schley Street located in Toledo, Lucas County, Ohio. The parcels are legally described as: "Lots 39 and 40 in J.R. Rauch Estate Subdivision" and bear the tax parcel Nos. 18604 and 18607, respectively. On the same date, Mrs.

---

1. The remaining defendant, MedCorp, Inc. (hereinafter "MedCorp"), has filed a memorandum in opposition to the motion for summary judgment of defendants Port Lawrence and Independent.

O'Brien acquired an adjacent parcel known as 50 West Sylvania Avenue upon which a commercial building is located (this property includes tax parcel Nos. 18587, 18591, and 18594). The Schley property was used as a parking lot for the West Sylvania property.

Shortly after the purchase of the property, plaintiffs began operating a mobile x-ray and EKG service out of the commercial building on the 50 West Sylvania property. On February 3, 1993, plaintiffs sold the franchise back to the franchisor, moved to Henderson, Nevada, and began a similar business in Las Vegas.

On or about January 7, 1994, plaintiffs and defendant MedCorp entered into a lease agreement for the West Sylvania property. The lease included use of the Schley Street parking lot adjacent to the building. The lease was not recorded. MedCorp obtained possession of the property on February 14, 1994. Its lease expired and MedCorp vacated the premises on or about February 14, 1997.

A complaint in the Tax Foreclosure Action was filed on October 3, 1995, naming Mrs. O'Brien and her unknown spouse as defendants. The subject of the complaint was the delinquency of the real estate taxes on the two parcels on Schley Street, Lots 39 and 40. Ultimately the treasurer's office utilized publication in order to secure constructive service of process on the plaintiffs. A description of the property and proceeding was published in The Toledo Legal News for three consecutive weeks.

The O'Briens did not make an appearance or otherwise respond to the complaint. Therefore, a default judgment was granted in favor of the county treasurer. An order directing the sale of the property was issued to the Lucas County Sheriff. Notice of the sheriff's sale was published in The Blade. Thereafter, the Schley parcels were sold and transferred by sheriff's deed to defendant Port Lawrence, Trustee, on behalf of purchaser and primary defendant Independent Investments, Inc. (hereinafter defendants collectively referred to as "Independent"). The deed was transferred and recorded on October 22, 1996.

Plaintiffs filed the instant action on October 31, 1996, to quiet title to the parking lot property in the names of the O'Briens. Independent has filed a counterclaim and cross-claim against plaintiffs and defendant MedCorp. The three-count counterclaim seeks (1) an order quieting title and of ejectment, (2) an order of eviction and writ of restitution based upon defendant MedCorp's unlawfully and forcibly detaining possession of the property, and (3) damages for trespass and attorney fees. MedCorp in its answer, counterclaim, and cross-claim joins the O'Briens' request for an order quieting title and seeks an order

establishing the validity of its unrecorded lease.[2]

On December 16, 1996, Independent filed motions for summary judgment on the O'Briens' and MedCorp's claims against it, and on Counts One and Two of its counterclaim against the O'Briens and cross-claim against MedCorp. Independent has also filed a motion for partial summary judgment on the issue of trespass in Count Three of his counterclaim against the O'Briens and cross-claim against MedCorp. Independent has not sought summary judgment as to the portion of Count Three that requests damages and attorney fees. Subsequently, plaintiffs filed a cross-motion for summary judgment and request for an order quieting title in their names to the Schley parcels. Oral arguments were held on the motions on March 13, 1997.

## II. SUMMARY JUDGMENT STANDARD

The general rules governing motions for summary judgment filed pursuant to Civ.R. 56 are well established. In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio stated the requirements that must be met before a motion for summary judgment can be granted:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment."

A party who claims to be entitled to summary judgment on the grounds that a nonmovant cannot prove its case bears the initial burden of (1) specifically identifying the basis of its motion, and (2) identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding an essential element of the nonmovant's case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274; see, also, *Dresher*, 75 Ohio St.3d at 299, 662 N.E.2d at 277–278 (Pfeifer, J., concurring in judgment only). The movant satisfies this burden by calling attention to some competent summary judgment evidence of the type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. *Id.* at 293, 299, 662

---

2. The court recognizes the cross-claims against MedCorp have been rendered moot, in part, by its vacating the property.

N.E.2d at 273–274, 277–278. Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue of material fact exists for trial. *Id.* Accord *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164, 1170–1172; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 800–802.

## III. ANALYSIS

Plaintiffs initially challenge the validity of the foreclosure proceedings based on the claim that the treasurer's office failed to comply with the requirements of Civ.R. 4.4(A), which requires the notice by publication to contain the last known address of the party for whom the notice is intended, and to notify said person that an answer must be filed within twenty-eight days after publication. Plaintiffs point to the fact that the notice of foreclosure listed Mrs. O'Brien's last known address as 4016 Schley Street and that the record is unrefuted that Mrs. O'Brien's last known address *was never* 4016 Schley Street.

In support if this argument, plaintiffs cite *Northland Dodge, Inc. v. Damachi* (1978), 56 Ohio App.2d 262, 10 O.O.3d 273, 382 N.E.2d 779, which held that the requirement of listing the last known address within the notice of publication is not merely a ministerial duty. The court further held in the syllabus:

"The requirement in Civ.R. 4.4(A), pertaining to service by publication, that the last known address of a defendant be included in the publication is mandatory, and a failure to include such information in the notice will result in defective service."

The court in *Northland Dodge, Inc.* went on to state that because service by publication is a last resort device, it will be strictly enforced, and that the purpose of including the last known address is to facilitate possible notice because a local person could more easily identify and notify a defendant of the suit. *Id.* at 264, 10 O.O.3d at 274–275, 382 N.E.2d at 780–781.

Because the treasurer's office failed to list the plaintiffs' last known address, plaintiffs argue that the service by publication is defective. Clearly, if service is defective, then the trial court is without jurisdiction to grant the default and the judgment based upon such faulty service is void *ab initio*.

In opposition, defendants argue that the procedural requirements attendant to service by publication need only be followed "substantially in the form" and the service by publication was constitutionally valid.

Clearly, the crux of the parties' dispute is whether notice of the tax foreclosure proceedings comported with the constitutional due process requirements. Plaintiffs argue that due to the deficiencies in the investigation to determine plaintiffs'

last known address to notify them of the tax foreclosure proceedings, their due process rights have been violated and, as such, title should be quieted in their names. In opposition, Independent contends that the treasurer's office used reasonable diligence in its search for the O'Briens. Moreover, Independent argues that the O'Briens failed to notify the treasurer of their change of address in order to protect their property. Thus, Independent claims that it legally acquired title and ownership rights to the property pursuant to the sheriff's sale and its rights are superior to the O'Briens. In addition, Independent argues that its rights are also superior to those of the lessees, MedCorp, since MedCorp's lease of the property was unrecorded and Independent had no actual knowledge that the lease existed.

Plaintiffs argue that Deputy Treasurer David Polek's investigation was deficient. Plaintiffs claim that the "Available Resource Checklist" and the procedures appurtenant were not properly followed. Plaintiffs further assert that a simple telephone call or visit to the West Sylvania and/or adjacent properties would have proven successful in locating the plaintiffs. Based upon the undisputed facts, plaintiffs assert that their due process rights of notice and an opportunity to be heard before the sale of their property were violated.

Independent's interpretation of the investigation is in stark contrast to that of the O'Briens. It purports that the deputy expended "considerable efforts" in his search for the O'Briens and that the foreclosure on and sale of plaintiffs' property passes constitutional muster.

In Ohio, there are five different tax foreclosure actions that may be commenced under Title 3 (Counties) or Title 57 (Taxation).[3] In the case *sub judice*, there has been a good deal of confusion as to which tax foreclosure provision was employed.[4] In order to clarify its position, Independent has filed a supplemental affidavit of Suzanne Mandross, who served as counsel for Lucas County in the tax foreclosure action against the O'Briens. Mandross indicates that the form of the pleadings used in the action are indicative of an *in personam* action pursuant to R.C. 5721.18(A). While plaintiffs do not necessarily concur that the action was commenced under R.C. 5721.18(A), they nevertheless state: "[I]n certain regards it really doesn't matter whether it's under section (A) or (B) so long as it's under 5721.18." Counsel for plaintiffs is correct, under the facts of this case, in stating that the precise provision is not dispositive. However, for purposes of ruling on

---

3. Tax foreclosure actions may be commenced pursuant to R.C. 323.25, 5721.14 through 5721.16, 5721.18(A), and 5721.18(B) and (C).

4. Independent first relied on R.C. 5721.18(B), then asserted that R.C. 323.25 was the correct provision.

the motions, the court will look to the procedures outlined in and applicable to R.C. 5721.18(A). R.C. 5721.18(A) provides in part:

"The foreclosure proceedings shall be instituted and prosecuted in the same manner as is provided by law for the foreclosure of mortgages on land, except that, if service by publication is necessary, such publication shall be made once a week for three consecutive weeks instead of as provided by the Rules of Civil Procedure, and the service shall be complete at the expiration of three weeks after the date of the first publication. In any proceeding prosecuted under this section, if the prosecuting attorney determines that service upon a defendant may be obtained ultimately only by publication, he may cause service to be made by certified mail, return receipt requested; ordinary mail; and publication, simultaneously."

In addition to the notice provisions in subsection (A) and due to the property rights at issue, the court must examine the sufficiency of notice in light of the Due Process Clause of the Fourteenth Amendment:

"Due process requires that notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Foreclosure of Liens for Delinquent Taxes* (1980), 62 Ohio St.2d 333, 16 O.O.3d 393, 405 N.E.2d 1030, paragraph one of the syllabus, following *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.

In *Mullane,* the Supreme Court of the United States realistically viewed the sufficiency of notice by publication:

"Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." *Id.* at 315, 70 S.Ct. at 658, 94 L.Ed. at 874; *Schroeder v. City of New York* (1962), 371 U.S. 208, 212, 83 S.Ct. 279, 282, 9 L.Ed.2d 255, 259.

Despite these inequities, the Supreme Court concluded that service by publication was sufficient to persons "whose interests or whereabouts could not with due diligence be ascertained * * *." *Id.* at 317, 70 S.Ct. at 659, 94 L.Ed. at 875. Thus, *Mullane* established a dual standard for evaluating the adequacy of publication notice: (1) whether under all the circumstances the means selected were reasonably calculated to reach interested parties and (2) whether the party giving notice has exercised reasonable diligence to ascertain the identities of interested parties.

Applying the dual standard for evaluating the adequacy of notice through publication, the court shall first address "whether under all the circumstances,

the means selected [by the Treasurer's Office] were reasonably calculated to reach [the plaintiffs]." In order to do so, the undisputed facts must be examined.

As previously noted, on March 13, 1992, Mrs. O'Brien took title to the Schley properties. On the same day, Mrs. O'Brien also took title to the real estate located at 50 West Sylvania Avenue. It is important to note that when the three parcels were purchased, Mrs. O'Brien listed the tax billing address for the West Sylvania property *and* the Schley properties as 50 West Sylvania Avenue.

Relative to the tax billing address listed by Mrs. O'Brien, the record establishes that the treasurer's office did send notice of the impending foreclosure action to 50 West Sylvania Avenue, Toledo, Ohio *43623*. At first blush, one might believe that the notice of foreclosure was sent to the address listed on the Real Estate Tax List for the Schley parcels. However, upon closer examination, the evidence establishes that notice was *not* sent to the tax billing address. The treasurer's office placed the wrong zip code on the foreclosure notice and the letter was returned to the treasurer's office with the post office stamp "No Such Number." The evidence is further unrefuted that Deputy Treasurer Polek did not conduct *any* follow-up. Deputy Treasurer Polek could have simply examined his file on the Schley parcels, which included the Auditor's Transfer Card. The card clearly listed the tax billing address of the Schley parcels as 50 West Sylvania Avenue, Toledo, Ohio *43612;* however, the treasurer's office never performed this simple task. The record is unrefuted that had the treasurer's office merely *accurately* addressed the foreclosure notice to Mrs. O'Brien at the 50 West Sylvania Avenue address, the plaintiffs would have received notice of the foreclosure proceeding.

██ The significance of the failure of the treasurer's office to properly send the letter to Mrs. O'Brien is very important relative to the dual standard outlined in *Mullane,* in that several authorities have suggested that where a party seeking to affect a property interest is aware of the failure of mailed notice to inform an interested party, the party must take further action in order to determine the best available address. *Schwartz v. Dey* (Mo.1984), 665 S.W.2d 933, 935, (en banc), citing *Robinson v. Hanrahan* (1972), 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47; *Covey v. Somers* (1956), 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021.[5]

---

5. See *Benton v. Logan* (App.1996), 323 S.C. 338, 474 S.E.2d 446 (where notice returned "unclaimed" or "forwarding order expired," person authorized to give notice to the owner did not exercise reasonable diligence because it should have been evident that the address was not the best available when the notice was returned undelivered); *Slattery v. Friedman* (1994), 99 Md.App. 106, 636 A.2d 1 (an examination of the tax rolls should extend beyond that required by statute, where such an examination is an appropriate follow-up to information that would shed light on the address of the last owner); *Demars v. Sandalwood Lakes Homeowners Assn.* (Fla.App.1993), 625 So.2d 1219 (judgment voidable where attorney failed to follow up on leads that he knew were likely to reveal appellant's address).

In addition to sending the notice to the wrong tax billing address, Deputy Polek sent notices to the "Tenants in Residence" at 4016 and 4018 Schley Street. The letters addressed to the Schley properties were returned with the handwritten notations "vacant" and "NSN." The record is undisputed that the Schley properties were and have been for many years a parking lot, incapable of receiving mail. When Mr. Polek received the returned letters with the notations, Deputy Polek *did not* pursue any additional investigation relative to the returned letters.

The record further establishes that the treasurer's office, in accordance with office procedure, consulted the current Ameritech telephone directory, the Toledo, Suburban, and Haines Criss Cross directories, and the Lucas County Library Department of Local History in an attempt to locate Mrs. O'Brien. Additionally, Deputy Treasurer Polek contacted the Department of Public Utilities. Upon contacting the Department of Public Utilities, Deputy Polek requested information on three addresses: 50 West Sylvania and 4016 and 4018 Schley. Mr. Polek learned that there was an *active* account at the West Sylvania address and telephoned the number given to him by the Department of Public Utilities. Deputy Treasurer Polek testified that when he telephoned the number, he asked for Mrs. O'Brien and was told that there was no one at that number by that name. Deputy Treasurer Polek testified that he did not know whether the telephone number that he dialed actually rang at the 50 West Sylvania Avenue location. Had Deputy Treasurer Polek checked the telephone number he called, he would have discovered that it was the telephone number of the Mid–Am National Bank, Jermain Park Branch, which had no association with the 50 West Sylvania Avenue property. The record is again unrefuted that had Deputy Treasurer Polek telephoned the tenant at 50 West Sylvania Avenue, the treasurer's office would have been able to locate the plaintiffs.

Not only must it be determined whether under all the circumstances the means selected by the treasurer's office were reasonably calculated to reach the O'Briens, but it must also be determined whether the treasurer's office exercised reasonable diligence to ascertain the O'Briens' address.

The Supreme Court of Ohio contemplated the definition of "reasonable diligence" in the context of determining a defendant's address. *Sizemore v. Smith* (1983), 6 Ohio St.3d 330, 6 O.B.R. 387, 453 N.E.2d 632. The court determined that what constitutes reasonable diligence depends on the facts of the case and that "[r]easonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." *Id.* at 332, 6 OBR at 389, 453 N.E.2d at 635.

The court agrees with Independent that the exercise of reasonable diligence does not contemplate the use of superhuman efforts and costly resources. A

hypertechnical analysis of what the deputy could have done to find the plaintiffs is neither helpful not practical. Rather, the proper focus is the balancing between the property interest to be protected and the state's interest in efficiency and economy. *Cent. Trust Co., N.A. v. Jensen* (1993), 67 Ohio St.3d 140, 143, 616 N.E.2d 873, 876, citing *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. This balancing contemplates a party's knowledge and ability to protect itself. *Id.* However, the court also cautioned that " 'a party's ability to take steps to safeguard its interests does not relieve the state of its constitutional obligation' " *Id.*, quoting *Mennonite Bd. of Missions v. Adams* (1983), 462 U.S. 791, 798–799, 103 S.Ct. 2706, 2711–2712, 77 L.Ed.2d 180, 187–188.

Analyzing the notice provisions in R.C. 5721.18(B) (which are similar to those in R.C. 5721.18[A] ) the Supreme Court of Ohio determined:

"Notification by ordinary mail is to be used in all instances where the taxpayer's name and address appear on the general tax list. When this information is unavailable, notification by publication is permissible as the sole means of apprising interested parties of a pending action. This conforms with due process." *In re Foreclosure of Liens for Delinquent Taxes*, 62 Ohio St.2d 333, 337, 16 O.O.3d 393, 396, 405 N.E.2d 1030, 1033.

The court also addressed a dispute as to the meaning of the term "address" as it appears in the statute. The taxpayer argued that it contemplated the mailing of notice to the residence address rather than the address of the property being foreclosed upon. *Id.* The court stated:

"[B]ecause due process is a flexible concept demanding more, or less, depending upon particular factual circumstances, we are unable to impose a single meaning on the word 'address' as used in R.C. 5721.18. We are restricted to saying that the address used must be such that a taxpayer may be 'reasonably calculated' to be in receipt of the notice. In situations where a taxpayer supplies officials with an address, it may be fairly presumed that the taxpayer can be reached at such address. Where as here, however, the official, *i.e.* treasurer, had actual knowledge of a different, and, indeed a *changed,* residence address, * * *, we cannot say that notice would be 'reasonably calculated' to reach the taxpayer when mailed to the older residence now used as investment property." *Id.* at 337–338, 16 O.O.3d at 396, 405 N.E.2d at 1033.

In the case *sub judice,* the Real Estate Tax List—Lucas County, Ohio, lists the 50 West Sylvania address as Mrs. O'Brien's tax mailing address for the Schley parcels. Despite this, and for some unknown reason, the tax bill for the 4016 and 4018 Schley parcels was addressed to Four B. Ventures, the prior owners. Ruth Seth, foreclosure coordinator for Lucas County, testified in her deposition that one of the sources for tax mailing addresses is the auditor's office. Thus, it is

unclear why the Schley property was still listed in the prior owner's name when both deeds were recorded at the auditor's office on March 13, 1992 [6] and the tax mailing address for *both* properties was recorded as the West Sylvania property. In addition to the recorded deeds, when property transfers from one owner to another, the auditor's office generates a "transfer card," where the new owner's name and address are placed. (Seth Depo. p. 21) Regarding this procedure, Seth testified:

"Q: Okay, now, as you can see, you can lay the documents next to each other if you'd like, the transfer card—I'm looking at Plaintiff's Exhibit 1 because it involves tax district parcel 18604 [4016 Schley Street], shows that in March 16, 1992, a transfer from Four B Ventures to Lori B. O'Brien. Do you know why that did not work—that change of information did not work its way onto the tax bill, a photocopy of which is attached to your affidavit?

"A: No, I don't know why this happened.

"* * *

"Q: * * * Before today, were you aware that the tax bill went to Four B Ventures but the transfer card shows Lori O'Brien.

"A: No, not before today."

■ Independent argues that despite the prior owner's name appearing on the tax bills for the Schley parcels, the treasurer's office has records of receiving payment of tax bills, after the sale of the properties to Mrs. O'Brien, as late as February 1993.[7] Clearly, in determining whether reasonable diligence has been exercised, the court must strike a reasonable balance between the property interest sought to be protected and the state's interest in the efficiency and finality in proceedings affecting property. *Cent. Trust Co., N.A., supra,* 67 Ohio St.3d at 143, 616 N.E.2d at 876–877. In striking this balance, a party's knowledge and ability to protect itself are relevant and are part of the balance. *Id.* at 143, 616 N.E.2d at 876–877. Independent argues that the payment of these tax bills is relevant to the issues before this court.

Independent further points to the fact that the plaintiffs are knowledgeable and familiar with billing and payment of real estate taxes in Lucas County. The

6. Title was taken by two separate deeds (one for the West Sylvania property and one for the Schley properties) so that the Schley parcels would not be included in the mortgage given Society Bank and Trust, by Mrs. O'Brien, on the West Sylvania property.

7. The last payment of the taxes for the Schley properties reflects the time when the plaintiffs personally vacated the West Sylvania Avenue building. Further, during MedCorp's lease, a tax statement for the Schley parcels for the second half of 1994 was sent to the West Sylvania address and was returned with a notation on the envelope, "Not Ours."

plaintiffs acknowledged that they were aware that the Sylvania Avenue property and the Schley properties had separate tax parcel numbers. The plaintiffs acknowledged that they were aware that the three parcels had separate tax parcel numbers; however, they believed the tax bills sent to 50 West Sylvania, Toledo Ohio, 43612, reflected the real estate taxes for the Sylvania and Schley parcels.

A review of the history of the payment of the taxes on the West Sylvania property bolsters plaintiffs' claim that they believed that the tax bill sent to 50 West Sylvania Avenue was for the Sylvania parcel and the Schley parcels. In contrast to the delinquency in payment of the tax bills for the Schley parcels, the tax bills sent to the West Sylvania property were routinely paid before and throughout the tax foreclosure proceedings. Also important to note is the fact that when Mr. O'Brien received notice in August 1995 that the tax bill sent to 50 West Sylvania was delinquent, he immediately paid the back taxes.

Independent further argues that the plaintiffs "took no steps to advise the Treasurer's Office of their current out-of-state address and instead left the property in the possession of successive tenants * * *" Through affidavit and deposition, Mr. O'Brien stated that when the plaintiffs left Toledo, he filled out a change-of-address card for the 50 West Sylvania property. Once the card was filed, the post office forwarded all first-class mail for one year. After this period expired, at least one tax bill was forwarded by MedCorp. MedCorp president Richard Bage testified:

"Q: * * * [I]f you received a tax bill with Lori O'Brien or Doug O'Brien's name on it, what you're saying is that you would have forwarded it directly to them?

"A: That's correct, sir.

"Q: Do you remember having done that?

"A: The only instance I can vaguely remember was when we first moved in, and I'm fairly confident that there was—it was—there was a tax bill, and I forwarded it on to Henderson, Nevada."

Mr. O'Brien stated in his affidavit that in August 1995, they received notice that the tax bills on the West Sylvania property had become delinquent. He immediately sent a check, with his Las Vegas business address, for the amount owed. Furthermore, he included with the check a note that stated: "Please address all correspondence to the Eastern Ave. [Nevada] address regarding this tax bill." They received the next bill approximately four months later and paid it with a check that included their home address on Via Avanti Street in Henderson, Nevada.

Deputy Treasurer David Polek indicated during his deposition:

"Q: If you knew, if you knew, that the property taxes for parcel 13–18591 [West Sylvania property] were current and had been paid on September 6th 1995, would that have aided you in your effort to locate Lori O'Brien"

"A: Yes.

"Q: Did you know that? Did you know that on September 6th, 1995, the taxes for parcel 13–18591 were paid?

"A: I did not know that."

In addition to paying the taxes on the West Sylvania property, on July 29 1996, Mrs. O'Brien, by quitclaim deed, transferred her interest in the three parcels to Douglas S. O'Brien and Lori B. O'Brien as trustees of the O'Brien Family Trust. This deed was recorded by the Lucas County Auditor's Office on August 27, 1996. On the paperwork necessary to effectuate this transfer Mrs. O'Brien listed her Henderson, Nevada address as her tax billing address. When asked whether the transfer of property in foreclosure is made known to those conducting the foreclosure, Seth responded affirmatively. Seth further testified:

"Q: So that if it had been a person who had not been located up until that point in time, the fact of this transfer during the pendency of the foreclosure would, if the system worked, generate notice to them of the pending foreclosure, is that what you're saying.?

"A: Correct."

Regarding plaintiffs' purported request for a change of tax mailing address, foreclosure coordinator Ruth Seth stated:

"Q: Is there any particular form that an owner has to fill out to have his tax mailing address changed?

"A: We do have a form that can be filled out. They did not have to as long as we get it in writing.

" * * *

"Q: If this check that is known as Plaintiff's Exhibit 7 was accompanied by a letter asking for a change of address, would that have been honored? A change of mailing address, I'm sorry, a change of mailing address for tax bills.

"A: A letter requesting a change of address?

"Q: Sure.

"A: It should have been, yes."

As previously noted, the conduct of the property owner must be examined when "balancing the respective interests of the state and the persons subject to the deprivation." *Cent. Trust Co., N.A., supra,* 67 Ohio St.3d at 142, 616 N.E.2d

at 875. However, the law is clear that "[m]ore importantly, a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *Mennonite Bd. of Missions v. Adams* (1983), 462 U.S. 791, 799, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180, 188. In other words, the central questions that must be asked are whether, under all the circumstances, the means selected by the treasurer's office were reasonably calculated to reach the plaintiffs and whether the treasurer's office exercised reasonable diligence in its search for the O'Briens.

As previously noted, the undisputed record reveals that the treasurer's office had several "leads" that, had they been more than cursorily investigated, would have put the O'Briens on notice of the impending foreclosure action.[8]

The first "lead" was the Real Estate Tax List that listed the 50 West Sylvania property as Lori O'Brien's tax billing address. This the address *she* provided and, as such, it could be presumed that she could be reached at such address. *In re Foreclosure of Liens, supra.* As previously noted, the deputy treasurer did attempt to notify Mrs. O'Brien of the foreclosure proceedings at the 50 West Sylvania address. However, the letter was returned with the post office stamp "No Such Number." Had the deputy conducted *any* sort of follow-up, he would have discovered the incorrect zip code and sent it to Mrs. O'Brien's tax billing address.

Next is the fact that tax payments on the 50 West Sylvania property remained current throughout the tax foreclosure proceedings. The deputy treasurer stated that had he been aware of this fact it would have helped him find the O'Briens. This information was readily available from the Real Estate Tax List for the Schley properties, since it cross-references the 50 West Sylvania property as a "multiple parcel sale."

In addition to the Real Estate Tax List, on July 29, 1996, Mrs. O'Brien transferred her interests in the three parcels to the O'Brien Family Trust. The quitclaim deed was recorded at the auditor's office in August 1996. Included in the paperwork, Ms. O'Brien listed her tax billing address as Henderson, Nevada. This transfer, according to Ruth Seth, should have certainly put the treasurer's office on notice of the new address.

Finally, the court points to the general failure by the treasurer's office to follow up on leads during the investigation. For example, a neighbor adjacent to the 50

---

8. Defendants have directed the court's attention to an Ohio appellate decision that affirmed the foreclosure sale of real property. *Evans v. Jallag* (Aug. 22, 1996), Licking App. No. 95–CA–127, unreported, 1996 WL 488427. The court finds the holding unpersuasive due to the sketchy factual history and the court's failure to address due process concerns that both parties, and this court, deem paramount.

West Sylvania address testified that he knew the current location of the O'Briens but was never asked. Neighbors at their residence address were also never contacted.

Defendants do not deny that follow-ups could have been made. However, Independent argues that additional searches would have placed too great a burden on the treasurer's office. In support, defendants cite the supplemental affidavit of Ruth Seth in which she provides a statistical analysis of the parcels of real property in Lucas County, and the number of those delinquent and those in foreclosure. Admittedly, there are a significant number of parcels. Despite this, the court cannot overlook or minimize the due process rights of the O'Briens that are undeniably individual. To allow the county to sell plaintiffs' property without proper notice, based upon the number of other parcels for which it is responsible, violates the basic tenets set forth in the Constitution.

The follow-up investigation which should have been performed was not unduly burdensome, nor was the pertinent information buried in other files. Moreover, had the procedures implemented by the treasurer and auditor's offices simply been followed, no investigation would have been necessary.

The law is clear that "[a]s a matter of general constitutional law," the minimum requirement of due process in any judicial deprivation of life, liberty, or property is notice and an opportunity to be heard appropriate to the case. *Central Trust Co., N.A., supra,* 67 Ohio St.3d at 142, 616 N.E.2d at 875. Further, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Citations omitted.) *Schroeder v. City of New York* (1962) 371 U.S. 208, 211, 83 S.Ct. 279, 282, 9 L.Ed.2d 255, 258–259.

In the case *sub judice,* when viewing the evidence in a light most favorable to the nonmovant, reasonable minds can only conclude that the actions of the Treasurer of Lucas County fell far short of the reasonable diligence required of the treasurer to locate the plaintiffs' address. Reasonable minds further can only conclude that the means selected by the Treasurer of Lucas County were not reasonably calculated to give the plaintiffs notice of the pendency of the foreclosure action. Based upon the foregoing, the court finds that the minimum constitutional requirement of due process had not been met prior to divesting the plaintiffs of their property interests in the parcels located at 4016 and 4018 Schley Street, Toledo, Lucas County, Ohio.

Based upon the foregoing, the court finds that the motion for summary judgment filed by defendants, Independent Investments, Inc. and Port Lawrence

Title and Trust Company, is not well taken and denies it. The court further finds that the cross-motion for summary judgment filed by the plaintiffs, Lori B. O'Brien and Douglas S. O'Brien, is well taken and grants it.

## JUDGMENT ENTRY

It is ORDERED, ADJUDGED and DECREED that the motion for summary judgment of defendants, Independent Investments, Inc. and Port Lawrence Title and Trust Company, Trustee, is found not well taken and is denied.

It is further ORDERED, ADJUDGED and DECREED that the cross-motion for summary judgment of plaintiffs Lori B. O'Brien and Douglas S. O'Briens is found well taken and is granted.

It is further ORDERED, ADJUDGED, and DECREED that defendant Independent Investments Inc.'s cross-claims against defendant MedCorp, Inc. have been rendered moot by the judgment entered herein and are therefore dismissed.

It is further ORDERED ADJUDGED and DECREED that the judgment entry signed by the Honorable James D. Bates on September 27, 1996, relative to the tax foreclosure complaint captioned *Ray T. Kest, Treasurer v. Lori B. O'Brien et al.,* Lucas County Common Pleas Court case No. 95–9039, is void *ab initio.*

It is further ORDERED, ADJUDGED and DECREED that quiet title shall be granted to plaintiffs Lori B. O'Brien and Douglas S. O'Brien as to the parcels known as Lots 39 and 40 in J.R. Rauch Estate Subdivision in the city of Toledo, Lucas County, Ohio, in accordance with Volume 18 of Plats, Page 39.

*Judgment accordingly.*