## SMITH v CLIFFS ON THE BAY CONDOMINIUM ASSOCIATION

Docket No. 111587. Decided October 10, 2000. On application by the
plaintiffs for leave to appeal, the Supreme Court, in lieu of granting
leave, reversed the judgment of the Court of Appeals and remanded
the case to that Court for further proceedings. Rehearing denied
*post*, 1218.

Earl D. and Suzanne C. Smith brought an action in the Washtenaw
Circuit Court against Cliffs on the Bay Condominium Association,
seeking to quiet title in certain real property they had obtained in a
tax sale. The court, T. P. Connors, J., granted summary disposition
for the plaintiffs. The Court of Appeals, SAAD, P.J., and O'CONNELL
and M. J. MATUZAK, JJ., reversed, ruling that the association was not
given constitutionally adequate notice of the tax sale and related
redemption periods. 226 Mich App 245 (1997) (Docket No. 199498).
The plaintiffs seek leave to appeal.

In an opinion per curiam, signed by Chief Justice WEAVER, and
Justices TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme Court
*held*:

The Court of Appeals improperly imposed notice requirements
beyond those required by the Legislature.

The general property tax act includes an extensive set of proce-
dures for notice of the steps in the tax sale process. The proce-
dures meet the requirements set forth in *Dow v Michigan*, 396
Mich 192 (1976), and provide a constitutionally sound procedure
for sale of property because of nonpayment of taxes. The Court of
Appeals decision was an improper intrusion into the Legislature's
authority to regulate tax sale proceedings and would undermine
the tax sale process. For due process purposes, the focus must be
on the constitutional adequacy of the statutory procedure and not
on whether some additional effort in a particular case would have
in fact led to a more certain means of notice.

Reversed and remanded.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that
in reversing the Court of Appeals decision, the majority elevates
form over substance and achieves an unjust result. Leave should be
granted to consider whether the notice requirements contained in

Michigan's General Property Tax Act satisfy the due process requirements imposed by the state and federal constitutions.

Although the Treasury Department complied with the letter of the notice statute when it mailed tax statements to the address for the defendant that appeared on the tax rolls, its failure, upon getting back undeliverable mailings to the defendant, to obtain the defendant's current address from its sister department, the Corporations and Securities Bureau, may well have been unreasonable under the Due Process Clause. The mere fact that a statute prescribes detailed steps aimed at ensuring reasonable notice does not mean that conforming notice inevitably will be reasonable. The Legislature could not contemplate every conceivable circumstance. To survive constitutional scrutiny, the notice attempted must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of state action against them and afford them an opportunity to present their objections. This case presents an important constitutional question that deserves a full hearing. A per curiam opinion is an inadequate vehicle to address it.

*Reach, Ranney & Carpenter* (by *Ian James Reach*) for the plaintiffs.

*Meisner & Associates, P.C.* (by *Robert M. Meisner*), for the defendant.

PER CURIAM. This case involves a constitutional challenge to the procedures by which the plaintiffs obtained a tax-sale title to property formerly owned by the defendant association. Each party asked the circuit court to quiet title. The court granted summary disposition for the plaintiffs. However, the Court of Appeals reversed, ruling that the association was not given constitutionally adequate notice of the tax sale and related redemption periods.

The case returns to this Court after a remand for additional findings. We conclude that mailing of tax delinquency and redemption notices to a corporation at its tax address of record in the manner required by the General Property Tax Act, MCL 211.1 *et seq.*; MSA

7.1 *et seq.*, is sufficient to provide constitutionally adequate notice. We therefore reverse the judgment of the Court of Appeals and reinstate the circuit court's judgment in favor of the plaintiffs.

I

During the 1960s a developer named C. James Davis constructed an apartment complex in Washtenaw County's Ypsilanti Township. None of the apartment buildings were constructed on the adjacent parcel that is the subject of this case. The record does not reveal whether the disputed parcel was included within the original description of the land on which the apartment complex was built. Davis later transferred ownership to a partnership called "Bay Properties." There were two partners, Keith A. Metcalf and John McKee. In 1972, Bay Properties converted the existing apartments to condominium ownership.

On May 26, 1972, Davis, Metcalf, and McKee created the defendant nonprofit corporation to be the managing entity for the condominiums. The original articles of incorporation show Metcalf as the association's resident agent and his mailing address as 770 South Adams, Suite 110, Birmingham, Michigan, 48011. Other contemporaneous documents show that same address for Bay Properties.

On June 7, 1972, Bay Properties conveyed the land beneath the condominium improvements to the association. The disputed parcel was not included in the deed's land description.

On October 10, 1973, by a separate quitclaim deed, Bay Properties conveyed the disputed parcel to the

association, stating its address as 770 South Adams, Suite 202, Birmingham, Michigan, 48011.

The record contains no further information about what became of Bay Properties, Davis, Metcalf, or McKee. Nor does it show whether anyone affiliated with the association continued to occupy the Birmingham address after 1973.

The disputed parcel is "green space" adjacent to the condominium complex. The association says that it and the owners of the individual condominium units have always assumed that the disputed parcel was included within the description and tax bills for the entire complex. The circuit court's order on remand, based on a stipulation by the parties, found that for unknown reasons the township did not place the disputed parcel on its tax rolls until 1976. Before then, on October 3, 1975, the association had filed with the Corporation and Securities Bureau a notice that both its resident agent and mailing address had changed. It identified the Ann Arbor Trust Company as the new resident agent, stating the new address as P.O. Box 12, Ann Arbor, Michigan, 48107.[1] Nothing required the association to send a copy of this notice to the township, and the association apparently did not do so.

Even after the proceedings on remand, the parties and the circuit court have been unable to establish the details of many of the events relevant to the sending of notices and proceedings regarding the delinquent taxes, tax sale, redemption periods, and trans-

---

[1] On two later occasions, August 1979, and January 1985, the association notified the Corporation and Securities Bureau of additional changes of its resident agent and mailing address.

fer of title. Much of this results from the lapse of time and the inadequacy of the available records.

While the inadequacy of the record leaves uncertainties, they are not critical for the disposition of this case. So far as can be determined, all notices relating to taxes on and the tax sale of the disputed parcel were sent to the Birmingham address. The association does not contend that the township, county, or state failed to give any of the required notices in the manner specified in the statutes. Rather, the association's claim is that the sending of notices to its former address in Birmingham was inadequate. The only information in the record indicating that the township, county, or state had reason to believe that the Birmingham address was not correct is in the state's affidavit regarding the notice of hearing under MCL 211.131e; MSA 7.190(3), which says that the notice was returned by the post office as "Not Deliverable As Addressed."

The township first issued a tax bill for the parcel in 1976, mailing it to the association at its by-then obsolete Birmingham address. The township has no record showing either that the taxes were paid or were not paid. The township's records show that in 1977, the tax bill was sent to the Birmingham address, and that the taxes were not paid.

After a tax bill has gone unpaid for three years, the property may be sold to satisfy the delinquent tax bill plus interest and penalties. MCL 211.60; MSA 7.104. Here, the tax sale was in 1980 to satisfy the delinquent 1977 tax bill.[2] No private party purchased the

---

[2] The tax bills for 1978 and 1979 were also returned after being unpaid. There was no separate tax sale with respect to them, however.

property, and it was bid in to the state as provided in MCL 211.67; MSA 7.112.

In the fall of 1987, after the expiration of the applicable redemption periods, the state issued a deed to the plaintiffs under MCL 211.131; MSA 7.188. The deed was recorded on November 13, 1987. Tax bills for 1987 and all subsequent years have been sent to the plaintiffs and paid by them.

In late 1990 or early 1991, the association learned that the plaintiffs claimed to own the disputed parcel and on February 27, 1991, recorded an affidavit that served to cloud the plaintiffs' title. After efforts to settle the dispute failed, plaintiffs filed this action on March 5, 1996, asking the circuit court to quiet their title. The association filed a counterclaim seeking the same relief. The circuit court granted summary disposition for the plaintiffs.

II

Following the circuit court's decision, the association appealed, and the Court of Appeals reversed. 226 Mich App 245; 573 NW2d 296 (1997). For its due process analysis, the Court of Appeals relied heavily on our decision in *Dow v Michigan*, 396 Mich 192; 240 NW2d 450 (1976). It focused on the language of *Dow* that the state must employ "such means 'as one desirous of actually informing [the property owner] might reasonably adopt' to notify [the owner] of the pendency of the proceedings." 396 Mich 210.

In the present case, the Court of Appeals faulted the state for failing to make any additional effort to ascertain the association's current address when the notice of hearing under MCL 211.131e;  MSA 7.190(3)

sent by certified mail was returned as undeliverable.
The Court of Appeals said:

> In the present case, defendant did not receive notice suf-
> ficient to satisfy due process concerns. Plaintiffs do not
> contend that defendant received actual notice, but assert
> that the attempts to notify defendant of the pending pro-
> ceedings were sufficient. However, it would be reasonable
> to expect a county, upon the return of a tax bill as undeliv-
> erable, to take some meaningful effort to obtain the correct
> address of the property owner. *Consolidated Rail Corp v
> Michigan*, 976 F Supp 1085, 1087 (WD Mich, 1996), citing
> *City of Grand Rapids v Green*, 187 Mich App 131, 136-137;
> 466 NW2d 388 (1991). Here, no attempt whatsoever was
> made to ascertain the current address of defendant upon
> the return of the notice of hearing. Obviously, such inaction
> is not characteristic of "one desirous of actually informing
> another." *Dow, supra* at 211. Further, this inaction is ren-
> dered more indefensible by the fact that defendant is a cor-
> poration required to maintain its current address with the
> Corporation and Securities Bureau.
>
> Therefore, because defendant did not receive adequate
> notice of the pending proceeding, the order granting sum-
> mary disposition in favor of plaintiffs with respect to the
> complaint must be set aside. In addition, in light of the
> above, we conclude that summary disposition in favor of
> defendant was warranted . . . . [226 Mich App 251-252.]

In light of that holding, the Court of Appeals said
that it was unnecessary to consider the association's
additional arguments about errors in some of the
recorded legal descriptions.[3]

After the Court of Appeals denied rehearing, the
plaintiffs filed an application for leave to appeal to
this Court.

---

[3] The state's affidavit regarding the notice of hearing and the deed from
the state to the plaintiffs each include an error (though different ones) in
their descriptions of the parcel.

III

As noted, the Court of Appeals focused on the language from *Dow* that the state must employ, "such means 'as one desirous of actually informing [the property owner] might reasonably adopt' to notify [the owner] of the pendency of the proceedings." However, we must keep in mind the context in which that statement was made. In *Dow* the question was whether notice by publication was sufficient.[4] After finding that notice by publication did not meet the constitutional standards, we went on to describe the kind of notice that would satisfy due process requirements:

> Personal service is not required. Notice by mail is adequate. Mailed notice must be directed to an address reasonably calculated to reach the person entitled to notice. Mailing should be by registered or certified mail, return receipt requested, both because of the greater care in delivery and because of the record of mailing and receipt or non-receipt provided. Such would be the efforts one desirous of actually informing another might reasonably employ. If the state exerts reasonable efforts, then failure to effectuate actual notice would not preclude foreclosure of the statutory lien and indefeasible vesting of title on expiration of the redemption period. [396 Mich 211.]

---

[4] The statute in effect at that time also provided for notice by mail. However, as we explained:

> While the statute provides for mailed notice, there is no record of notice having been mailed or received in this case. The state does not contend that we should assume that notices were duly mailed; the statute's express statement that no consequence shall attach to non-mailing precludes any such contention. [396 Mich 207.]

Following our *Dow* decision, the Legislature enacted 1976 PA 292, adding additional notice provisions. See MCL 211.61b; MSA 7.106(1), MCL 211.73c; MSA 7.119(2), MCL 211.131c(1); MSA 7.190(1)(1); and MCL 211.131e(1); MSA 7.190(3)(1). With those changes, the General Property Tax Act now includes an extensive set of procedures for notice of the steps in the tax sale process.[5] These procedures meet the

---

[5] After the township has notified the county treasurer that the taxes are unpaid, the county treasurer is required to send two mailings regarding the delinquent taxes. One is within 120 days after receiving the statement of delinquency from the township. MCL 211.57(2); MSA 7.101(2). The other is to be within 120 days after March 1 in the year following failure to pay the taxes. MCL 211.57(3); MSA 7.101(3).

Three years after failure to pay the taxes, the property may be sold. The sale is to occur on the first Tuesday in May in the third year following nonpayment. MCL 211.60; MSA 7.104. The state treasurer files a petition in circuit court seeking what amounts to a show cause order. MCL 211.61; MSA 7.105. Notices are to be sent to those with interest in the property 30 days before the sale. MCL 211.61a; MSA 7.106. In addition, notice of the tax sale is subject to a newspaper publication requirement. MCL 211.62, 211.63; MSA 7.107, 7.108. Where the property has a street address, and a notice required by § 61a has not been sent to that address, or a notice was sent but was forwarded or returned as undeliverable, the statute provides for a mailing to "occupant." MCL 211.61b; MSA 7.106(1).

Following a tax sale, there are a series of redemption deadlines. One is a year after the tax sale. MCL 211.74; MSA 7.120. A notice is to be sent to persons holding an interest in the property at least 120 days before that date. MCL 211.73c(1); MSA 7.119(2)(1). Under certain circumstances, a mailing to "occupant" is also required. MCL 211.73c(2); MSA 7.119(2)(2). Title vests in the state one year after the tax sale if the property is not redeemed. MCL 211.67; MSA 7.112.

Another redemption period is the first Tuesday in November after title vests in the state. MCL 211.131c(1); MSA 7.190(1)(1). During that extended redemption period, a Department of Natural Resources agent is to make a personal visit to the property to ascertain whether or not it is occupied. If occupied, the DNR must attempt to personally serve the person occupying the land with a copy of a redemption notice. If the property is occupied and personal service cannot be accomplished a notice must be posted on the premises in a conspicuous manner. MCL 211.131c(5); MSA 7.190(1)(5). The parties to this case do not discuss this redemption deadline or the related notice requirement.

MCL 211.131e(1), (3); MSA 7.190(3)(1), (3) provides for the giving of a notice to all owners of significant interests in the property that a hear-

requirements set forth in *Dow* and thus provide a constitutionally sound procedure for sale of property because of nonpayment of taxes.

The statute generally provides that mailed notice to the owner is to be at the owner's last known address.[6] In this case there is nothing to indicate that the township, county, or state had been informed of a new address for the association. Thus, it was appropriate for notices to be sent to the Birmingham address stated in the deed conveying the disputed parcel to the association. The fact that one of the mailings was returned by the post office as undeliverable does not impose on the state the obligation to undertake an investigation to see if a new address for the association could be located. We reject the contrary conclusion of *Consolidated Rail Corp v Michigan, supra.*[7]

─────────────────────

ing will be conducted at which they may show cause why the tax sale should be canceled. That section provides an additional 30 days after the hearing to redeem. In this case, an affidavit recorded by the state indicates that the date of the hearing was December 28, 1981.

[6] E.g., MCL 211.44; MSA 7.87; MCL 211.61a(2); MSA 7.106(2).

[7] Courts in other jurisdictions have addressed similar questions about the obligation of taxing authorities to go beyond record information in an attempt to ascertain current addresses, finding no constitutional obligation to go beyond statutory requirements. In *Keiser v Young,* 181 AD2d 170; 585 NYS2d 880 (1992), the property owner contended that mailings were not sent to her correct address and that because certain notices were returned as "unclaimed," the county was required to take additional steps to achieve notice. The court rejected the claim, explaining:

Pursuant to [Real Property Tax Law] 1002(4), notice of an impending tax sale is to be given to an owner of real property by first class mail at the address "shown on the assessment roll." Similar requirements apply to follow-up redemption notices (see, RPTL 1014[3]). Here, the uncontradicted proof in the record establishes that the mailing address for defendant shown on the relevant assessment roll and used by the County was the same as that contained in both defendant's deed to the property and the real property transfer report . . . . Thus, as in *Matter of Girrbach v Levine,* 132 AD2d 41; 522 NYS2d 276 [(1987)], the County was entitled to

The Legislature has provided a notice procedure that meets constitutional standards. The Court of Appeals decision in this case constitutes an improper intrusion into the Legislature's authority to regulate tax sale proceedings. The courts lack the authority to create new notice requirements. The fact that another statutory scheme might appear to have been wiser or would produce fairer results is irrelevant. Arguments based on such policy considerations must be addressed to the Legislature. E.g., *People v McIntire*, 461 Mich 147, 159; 599 NW2d 102 (1999); *Oakland Co Bd of Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 612-613; 575 NW2d 751 (1998); *People v Kirby*, 440 Mich 485, 493-494; 487 NW2d 404 (1992). Similarly, the fact that the township might have sought out defendant's legal residence in a more thorough or conscientious manner is not relevant to our analysis, in light of the language of the statute.

---

rely on the record information. In so doing, the County satisfied the mandates of due process by providing "notice reasonably calculated, under all the circumstances, to apprise [defendant] of the pendency of the [tax sale proceedings] and afford [her] an opportunity to present [her] objections" (*Mullane v Central Hanover Trust Co*, 339 US 306, 314; 70 S Ct 652, 657; 94 L Ed 865 [(1950)]; see, *Mennonite Bd of Missions v Adams*, 462 US 791; 103 S Ct 2706; 77 L Ed 2d 180 [(1983)] . . .). [181 AD2d 173.]

Similarly, in *Dahn v Trownsell*, 576 NW2d 535 (SD, 1998), the court recognized that mailings to an owner's last known address cannot guarantee that the property owner receives actual notice in every case. However, it held that such a mailing, as provided by the South Dakota statute, was " 'notice reasonably calculated, under all circumstances, to apprise interest[ed] parties of the pendency of the action and afford them an opportunity to present their objections,' " quoting *Mullane v Central Hanover Bank & Trust Co*, *supra* at 314.

See also *Atlantic City v Block C-11, Lot 11*, 74 NJ 34; 376 A2d 926 (1977).

Not only does the Court of Appeals decision infringe the authority of the Legislature, but it would also undermine the tax sale process. The principle underlying the Court of Appeals decision is that in some circumstances it is not enough to comply with the requirements of the General Property Tax Act, but that more must be done. However, exactly what that is will be different in every case. No matter what efforts are made to give notice, the owner who has not, in fact, been provided notice will always contend that something more could have been done. This will make the process of tax sales completely unpredictable, destroying the government's ability to recoup unpaid taxes by foreclosing and reselling. For due process purposes, the focus must be on the constitutional adequacy of the statutory procedure and not on whether some additional effort in a particular case would have in fact led to a more certain means of notice.

IV

The Court of Appeals improperly imposed notice requirements beyond those required by the Legislature. We thus reverse the judgment of the Court of Appeals. Because of its conclusion regarding the notice question, the Court of Appeals did not discuss other claims raised by the association. We therefore remand the case to the Court of Appeals for consideration of those issues.

WEAVER, C.J., and TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

KELLY, J. (*dissenting*). I cannot join the majority in its opinion. In reversing the Court of Appeals deci-

sion, the majority elevates form over substance and achieves an unjust result. I would grant leave to consider whether the notice requirements contained in Michigan's General Property Tax Act[1] satisfy the due process requirements imposed by the state and federal constitutions.

This case presents an important constitutional question that deserves a full hearing. A per curiam opinion is an inadequate vehicle to address it.

The facts presented by this case are troubling. Apparently, the Treasury Department complied with the letter of the notice statute when it mailed tax statements to the address for defendant that appeared on the tax rolls. From a technical standpoint, the General Property Tax Act required nothing more of the department. Yet, its failure, upon getting back undeliverable mailings to defendant, to obtain defendant's current address from its sister department, the Corporations and Securities Bureau, may well have been unreasonable under the Due Process Clause of the United States Constitution.

The mere fact that a statute prescribes detailed steps aimed at ensuring "reasonable notice" does not mean that conforming notice inevitably will be reasonable. The Legislature could not contemplate every conceivable circumstance. To survive constitutional scrutiny, the notice attempted must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [state] action [against them] and afford them an opportunity to present their objections." *Mullane v Central Hanover*

---

[1] MCL 211.1 *et seq.*; MSA 7.1 *et seq.*

*Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950).

In this case, the department's actions, while in technical compliance with the statute, did not give defendant notice and may have failed the reasonableness test imposed by *Mullane*. From the perspective of the corporate defendant, the majority's decision renders an unjust result. The defendant corporation, like the department, performed every act required of it by law. When it changed its corporate address and agent, it informed the appropriate state office.

The majority resolves the case in a way that deprives defendant of its property without it ever receiving actual notice that it owed taxes or of a tax foreclosure sale. Defendant had reason to believe it had paid all taxes due. It is difficult to reconcile such a result with the spirit of the statute, which strives to ensure reasonable notice and protect the constitutional rights of property owners.

In my view, the notice statute, inasmuch as it seeks to achieve reasonableness, may have required more from the state in this instance. When the department receives notice that its tax bills directed to a corporation are undeliverable at a certain address, reasonableness may require one more step: an inquiry to the Corporations and Securities Bureau to check for a current address. See, e.g., *Patrick v Rice*, 112 NM 285, 288; 814 P2d 463 (1991) ("Determining that the division complied with applicable notice statutes resolves only half the question on appeal. . . . [T]he notice of such [sale] must comply with minimum due process standards"); *O'Brien v Port Lawrence Title & Trust Co*, 87 Ohio Misc 2d 10, 16; 688 NE2d 1136 (1997) (holding that, although the applicable statute was sat-

isfied, due process was not); *Tracy v Chester Co, Tax Claim Bureau,* 507 Pa 288, 296-297; 489 A2d 1334 (1985).

The feasability of requiring this step should be explored during this appeal. It may be revealed that requiring it would not turn the department into a sleuthing operation, nor have a devastating ripple effect on the title insurance industry. A full exploration of it might show that it would ensure reasonable notice under the narrow circumstances presented by this case.

The Court should follow the lead of the Court of Appeals and consider interpreting the statute to require this simple, common-sense step where a corporate change of address is involved. The department's inaction in this case may have failed to give the constitutionally required reasonable notice despite being in compliance with the statute. Therefore, the Court should grant leave to consider this important constitutional rights and property rights issue.

CAVANAGH, J., concurred with KELLY, J.