Johnny HOWARD; Sally Howard; United Management Co., L.L.C. individually and in a representative capacity Plaintiffs—Appellants,

v.

CITY OF DETROIT; Community and Economic Development Department of the City of Detroit; State of Michigan; John Does 1–15, being unknown property owners who acquired certain real estate from the above parties Defendants—Appellees.

No. 01–2589.

United States Court of Appeals, Sixth Circuit.

July 14, 2003.

Before MOORE and ROGERS, Circuit Judges; and HOOD, District Judge.*

**OPINION**

ROGERS, Circuit Judge.

Plaintiffs, Johnny Howard, Sally Howard, and United Management Co., L.L.C. ("United"), appeal from the district court's order granting summary judgment to the defendants on the grounds that plaintiffs' claims are barred by the applicable statute of limitations. Plaintiffs' complaint alleged that a property lot was transferred pursuant to a 1983 tax sale in violation of the Michigan General Property Tax Act, and that the transfer amounted to a taking in violation of the Michigan and United States Constitutions. The plaintiffs are seeking damages, the opportunity to redeem the property from the 1983 tax sale, and title to the property. These claims are barred by the applicable statutes of limitations, and we therefore affirm the district court's dismissal of this case.

## I. BACKGROUND

This appeal concerns a parcel of property legally described as: State of Michigan,

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

County of Wayne, City of Detroit, Brush Subdivision L1 P253, Block 3, Lot 15, Ward 1, Item 653, which we shall refer to as "Lot 15." On December 15, 1978, Johnny Howard entered into a land contract (the "Land Contract") to purchase Lot 15, along with Lots 13 and 14 which are adjacent, and this interest was recorded on January 16, 1979. The seller in the Land Contract is not a party to this dispute. Lots 13, 14, and 15 are commonly known as "234 Alfred," and an apartment building is situated on Lots 13 and 14. Lot 15 is vacant and, according to the plaintiffs, is used for parking by the occupants of 234 Alfred.

Under the Land Contract certain responsibilities were split between the parties. Pertinent to this appeal is Section 2(e), which obligated the seller to pay "taxes, assessments when due and before any penalty attaches, and submit receipts therefore to the Purchaser upon demand," as well as Section 1(c), which obligated the seller to convey title to Johnny Howard by warranty deed and free of all encumbrances.

In 1980, state real property taxes on Lot 15 went unpaid, and this nonpayment resulted in the inclusion of Lot 15 in the 1983 annual tax sale in Wayne County Circuit Court. This sale was authorized under the General Property Tax Act (the "GPTA"), 1893 Pub. Acts 206 as amended, Mich. Comp. Laws § 211.1 *et seq.* Due to the lack of private bidders, Lot 15 was bid to the State of Michigan. Because the state bid was not redeemed prior to May 1, 1984, nor purchased by a private purchaser, title vested in the State of Michigan on that date subject to certain rights of redemption found in Sections 131c and 131e of the GPTA. *See* Mich. Comp. Laws §§ 211.84; 211.74; 211.67; 211.131c; 211.131e.

On June 1, 1984, Lot 15 was deeded to the State of Michigan by the State Treasurer. Lot 15 was then subject to another redemption period that extended until November 6, 1984. Mich. Comp. Laws § 211.131c. On September 5, 1984, Johnny Howard executed a quitclaim deed for Lots 13, 14, and 15 to Sally Sneed (now Sally Howard), and this deed was recorded on September 6, 1984. Sally Sneed, now plaintiff Sally Howard, thereby became the only plaintiff with any record interest. Nevertheless, Lot 15 was not redeemed prior to November 6, 1984, so on November 29, 1984, the deed to the State was recorded.

In early June of 1985, notice of a show cause hearing to be held on June 24, 1985, regarding Lot 15 was sent by registered mail, return receipt requested, to: Sally Snead, 8711 Intervale, Detroit, MI 48238. This notice was sent pursuant to Mich. Comp. Laws § 211.131e, which required that a show cause hearing be held for tax foreclosure sales, that notice of the hearing be sent to owners of a "significant property interest," and that those owners have until 30 days after the hearing to redeem the property. On June 11, 1985, the notice was delivered and signed for by a "Sallie Snead." The Michigan Treasury Department no longer has copies of the notice or the titlework on which the notice was based, because that documentation was destroyed in the normal course of business under the Department's routine record retention schedule. The Treasury Department retains notices and titlework for six years after the show cause hearings. No one appeared at the show cause hearing held on June 24, 1985, and no redemption was made within 30 days after the hearing.

Lot 15 was deeded by the Michigan Department of Natural Resources ("MDNR") to the City of Detroit (City), Community and Economic Development

Department, by quitclaim public use deed on October 16, 1985. The MDNR was required to inspect the property pursuant to Mich. Comp. Laws 211.131c(4), but the MDNR no longer has any records of an inspection because the records were destroyed in the normal course of business. The MDNR only retains documentation in support of property deeded by public use deed for 10 years. The MDNR's deed to the City was recorded on December 4, 1985.

Johnny Howard completed payment on the Land Contract, and on November 21, 1989, the seller conveyed Lots 13, 14, and 15 to Johnny Howard by warranty deed. On January 2, 1996, Johnny and Sally Howard conveyed Lots 13, 14, and 15 to their property management company, plaintiff United, by quitclaim deed. This deed was recorded on February 24, 1996.

In September of 1999, the Howards received notice from the seller of the Land Contract that Lots 13 and 14 were proposed for sale by the City for unpaid taxes. The Howards then paid the taxes due on Lots 13 and 14, and attempted to record the warranty deed of November 21, 1989. The Wayne County Register of Deeds refused to record the warranty deed because the City had already recorded an interest in Lot 15 under the 1985 deed from the MDNR. The Howards offered to pay the taxes and other charges due on Lot 15, but this offer was refused.

The Howards filed suit to quiet title to Lot 15 (as well as the property of any similarly situated class members) on February 22, 2001, in the Wayne County Circuit Court. Plaintiffs also sought damages, alleging violations of the GPTA and a taking in violation of the Michigan and United States Constitutions. The defendants include the City of Detroit and its Community and Economic Development Department (the "City"), the State of Michigan, and defendants Does 1–15. In paragraph 13 of the complaint, the defendants Does are identified as current owners of property within that area of Detroit covered by the class allegations who acquired their interests in that property from tax lien foreclosures dating from end of World War II to the present. The City and the State removed the action to the United States District Court for the Eastern District of Michigan on the basis of federal subject matter jurisdiction.

The State filed a motion to dismiss pursuant to Fed.R.Civ.P. 56(c), alleging that the complaint is time-barred by any of several statutes of limitations. The district court, ruling from the bench, dismissed the complaint as barred by the six month statute of limitations found in Mich. Comp. Laws § 211.431, and judgment was entered on October 12, 2002. The complaint was dismissed prior to the filing of a motion to certify a class.

## II. ANALYSIS

### A. Standard of Review

A court of appeals reviews a decision to grant summary judgment *de novo*. *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 521 (6th Cir.1997). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In summary judgment the facts as well as any inferences that can be drawn from them must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## B. Federalism Considerations

■ This case deals with detailed provisions of state property law, perhaps best resolved, in the first instance at least, by the state courts. We deal first with whether any federalism principles precluded resolution of this case by the district court.

Neither defendant has argued that this action is not properly before this court due to the Tax Injunction Act, 28 U.S.C. § 1341, or related principles of comity and federalism. Indeed, the City removed this action to federal court, and the State joined in the removal. It is nevertheless possible that—to the extent that plaintiffs are requesting non-injunctive relief—the comity concerns described by the Supreme Court in *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) ("*FAIR*"), precluded the relief sought in this case.[1]

However, given that defendants removed this action to federal court, they have waived such arguments. *Cf. Lapides v. Bd. of Regents*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

To the extent that plaintiffs are seeking injunctive relief,[2] it may be argued that the Tax Injunction Act, as a limit on subject matter jurisdiction, cannot be waived. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (subject matter jurisdiction cannot be waived); *see also Ku v. Tennessee*, 322 F.3d 431, 433 (6th Cir.2003) ("A federal court's original jurisdiction is created by statute enacted under Article III, which functions as a fundamental limit on federal power. Because it is a fundamental 'subject matter' limitation on federal judicial power, a defect in a federal court's original jurisdiction need not be asserted by any party, cannot be waived by any party, and

---

1. The Tax Injunction Act (the "Act") provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Act reflects "the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." *FAIR*, 454 U.S. at 103, 102 S.Ct. 177. Following the passage of the Tax Injunction Act, the Supreme Court decided *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), in which it reasoned that, although declaratory relief was not expressly prohibited by the Tax Injunction Act, the "considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." *Id.* at 299, 63 S.Ct. 1070. The "considerations" discussed in *Huffman*, like those underlying the Tax Injunction Act, were principles of federalism and comity. *FAIR* at 111.

    In *FAIR*, the principles of federalism and comity in relation to state tax systems were held to require that § 1983 actions also be decided by the states so long as the states provide a "plain, adequate, and complete remedy". 454 U.S. at 116. The Court reasoned that a recovery of damages under § 1983 would first require a determination of the constitutionality of a state tax plan, and therefore would raise the same concerns about federalism and comity as those articulated in *Huffman*. *Id.* at 115.

    The Supreme Court's decisions in both *Huffman* and *FAIR* were based not on a lack of subject matter jurisdiction, but on principles of federalism and comity enforceable in equity. An objection to the equity jurisdiction of a court, unlike subject matter jurisdiction, can be waived. *See Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 568 n. 1, 59 S.Ct. 657, 83 L.Ed. 987 (1939) ("Unlike the objection that the court is without jurisdiction as a federal court, the parties may waive their objections to the equity jurisdiction by consent or by failure to take it seasonably." (citations omitted)).

2. The complaint asks for orders to be entered against the defendants but does not specifically request injunctive relief.

must be raised by a Court *sua sponte* when noticed."). The Supreme Court has recently held that a state's sovereign immunity, which is enforced through jurisdictional provisions in Article III and the 11th Amendment of the Constitution, can be waived by state removal of an action to federal court. *Lapides,* 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). This holding arguably raises the question whether the deference to state authority codified in the jurisdictional provisions of the Tax Injunction Act can also be waived by removal. In light of defendants' continued acceptance of federal jurisdiction, and in light of our ultimate disposition of this case, it is not necessary for us to resolve that difficult question. It is sufficient for us to indicate that any injunctive relief requested in this case may have been beyond the jurisdictional power of the district court.

## C. Michigan's Real Property Tax Foreclosure Process

The process for enforcing Michigan's real property tax laws is set forth in the GPTA, 1893 Mich. Pub. Acts 206, as amended, Mich. Comp. Laws § 211.1 *et seq.* An entirely new foreclosure process applicable to taxes for 1999 and subsequent tax years, was adopted as 1999 Mich. Pub. Acts 123.[3]

### 1. Pre–Sale Process

Property is assessed each tax year based on the taxable status of the property on December 31 of the preceding year. Taxes become a lien on the property on December 1 of the tax year. Mich. Comp. Laws § 211.40. Taxes not paid by March 1

of the year following the tax year are delinquent and tax rolls are sent to the county treasurer for collection of unpaid taxes. Mich. Comp. Laws § 211.55.

Within 120 days after March 1 of the year following the tax year, the county treasurer sends notice of the delinquency to the taxpayers shown on the current land file supplied by the local assessor.[4] Mich. Comp. Laws § 211.57(2). The county treasurer mails a second notice to the taxpayer within 120 days after March 1 of the second year following the tax year, using the land file supplied by the local assessor. Mich. Comp. Laws § 211.57(3).

### 2. The Annual Tax Sale

In the third year following the tax year, tax liens are offered at the annual tax sale held in each county. Mich. Comp. Laws § 211.60. The action is commenced by the filing of a petition on behalf of the Michigan State Treasurer in the circuit court in the county in which the lands are situated. Mich. Comp. Laws § 211.61. Upon the filing of the petition, Section 61a of the GPTA, Mich. Comp. Laws § 211.61a, requires the county treasurer to notify persons against whom delinquent taxes are assessed, according to the records of the county treasurer's office, of the impending tax sale. Section 61a also states that "[f]ailure to receive or serve the notice shall not invalidate the proceedings taken under the state treasurer's petition and decree of the circuit court in foreclosure and sale of the lands for taxes." Mich. Comp. Laws § 211.61a.

Additionally, notice is given by newspaper publication. Mich. Comp. Laws §§ 211.62, 211.66. The county treasurer

---

**3.** This new process is not at issue in this appeal.

**4.** This is important to note, because, as will become clear in our analysis, notice is only

required to be sent under these sections *to the person to whom the tax is assessed,* which in this case was the seller in the Land Contract, not any of the plaintiffs.

also sends notice not later than 30 days prior to sale, addressed to "occupant" at the street address of each parcel included in the sale if notice has not earlier been sent to that address or if notice sent to such address was returned. Mich. Comp. Laws § 211.61b.

Following these notices, a hearing is held in the circuit court at which time any person having an interest in a parcel of property may object to the inclusion of a tax lien on the property in the tax sale. In response to objections made at the hearing, the court may exclude parcels from the sale. Following the hearing, the circuit court issues its order decreeing the taxes valid and ordering sale of the property at the annual tax sale if not redeemed prior to the sale date. The judgment amount for which the lien is offered at the sale is the total of the unpaid taxes for the tax year and any prior years, plus a four percent administration fee, a ten dollar expense of sale fee, and interest on the unpaid taxes at the rate of 1.25 percent per month back to the month of March when the taxes first became delinquent.

The tax sale is held on the first Tuesday in May of each year. Mich. Comp. Laws § 211.70. The successful bidder is issued a tax certificate. Any lien not purchased at the tax sale is automatically bid to the State of Michigan. *Id.* State bids may be purchased "over the counter" from the Department of Treasury at any time prior to April 20 of the year following the sale. The purchaser receives a tax certificate which is treated the same as certificates issued upon purchase at the tax sale. Mich. Comp. Laws § 211.84.

### 3. Post–Sale Redemption Pursuant to Section 74

Owners have until the first Tuesday in May of the year following the tax sale in which to redeem parcels from the preceding year's tax sale, by payment of the judgment amount plus interest at 1.25 percent per month or portion thereof under Section 74 of the GPTA. Mich. Comp. Laws § 211.74. Not later than 120 days before the expiration of the redemption period, the county treasurer must send another notice to each person who, according to the records of the county treasurer, has an interest in a parcel of land offered at the tax sale and not yet redeemed. Mich. Comp. Laws § 211.73c(1). Section 73c also provides that "[f]ailure to receive or serve the notice or a defect in the notice does not invalidate the proceedings taken under the state treasurer's petition and order of the circuit court for sale of a tax lien on the property for taxes." Mich. Comp. Laws § 211.73c(6).

### 4. Redemption of Parcels Bid to the State

Title vests in the state on the first Tuesday in May of the year following the tax sale if not redeemed prior thereto. Mich. Comp. Laws § 211.67. Once title is vested in the state, owners have an additional right of redemption pursuant to Section 131c of the GPTA, Mich. Comp. Laws § 211.131c, extending to the day before the first Tuesday in November following vesting of title in the state, i.e., 18 months following the tax sale.[5] Redemption is by

**5.** If the tax lien is purchased by a private purchaser at the tax sale and is not redeemed by the first Tuesday in May of the following year, the tax lien purchaser is entitled to a tax deed from the state treasurer. Mich. Comp. Laws § 211.72. After the tax deed is issued to a private purchaser, the prior owners have a

second and final redemption period pursuant to Section 140 of the Act, Mich. Comp. Laws § 211.140. Section 140 requires the tax deed holder to serve notice of a right of redemption on occupants and record interestholders. Parties entitled to notice have six months after service of the Section 140 notice in

payment of the judgment amount plus interest at 1.25 percent per month, all other delinquent taxes, plus accrued interest and penalties and an additional processing fee of fifty dollars per parcel. During the redemption period under Section 131c, the MDNR is required to inspect each parcel of land to determine whether or not the land is occupied. Mich. Comp. Laws § 211.131c(5). If the land appears to be occupied, the MDNR must serve notice of the right of redemption upon the occupants or, if unable to serve the notice personally, post the property. *Id.*

One final right of redemption after expiration of the Section 131c redemption period arises under Section 131e of the GPTA. Mich. Comp. Laws § 211.131e. Section 131e provides that a right of redemption "shall be extended" until the owners of a recorded property interest in the property have been notified of a hearing before the Treasury Department. The hearing provides the owners an opportunity to show cause why the tax sale and deed to the state should be canceled for any of the reasons set forth in Section 98 of the Act, Mich. Comp. Laws § 211.98.[6]

Section 131e allows redemption up to 30 days following the hearing before the Treasury Department. Redemption requires payment of the amounts set out above for redemption under Section 131c, plus an additional amount of 50 percent of the taxes for which the property was offered at the tax sale. As first adopted in 1976, Section 131e required notice to be sent to "owners of significant property interest" for those lands "which have a state equalized value of $1,000 or more." Amended by 1996 Mich. Pub. Acts 476, effective December 26, 1996, Section 131e now requires notice to "the owners of a recorded property interest in the property . . . ."

5. *Disposal of Surplus Lands by the MDNR*

The MDNR reviews those lands deeded to it by the State Treasurer to determine lands suitable for use by the Department. Mich. Comp. Laws § 211.131(1). Lands not suitable for MDNR use may be transferred to other governmental entities, churches, or public educational institutions for public uses. Mich. Comp. Laws § 324.2101.[7]

**D. Notice**

There are two underlying issues concerning notice in this case. The first is whether notice to the plaintiffs was required, and if required, when the notice should have taken place. The second is

---

which to redeem the property by payment of the judgment amount which the tax deed holder paid at the tax sale, plus fifty percent of the judgment amount, plus service fees for service of the notices. The Section 140 notice provisions apply only to property deeded by the State Treasurer to a tax lien purchaser. They do not apply to lands purchased from the MDNR pursuant to Mich. Comp. Laws § 211.131. *Flint v. Takacs*, 181 Mich.App. 732, 449 N.W.2d 699, 701 (1989).

6. The reasons are: 1) the property was exempt from taxation; 2) the taxes had been paid; 3) the sale was in contravention of the GPTA; 4) a certificate, tax history, or statement had been issued by an appropriate offi-

cer showing the taxes had been paid; and 5) the description of the land used in the assessment was so indefinite or erroneous as to result in the tax lien being void.

7. Lands not withheld from sale by the MDNR or deeded for public purposes may be offered by the MDNR at public auction at a minimum bid established by the MDNR director. Mich. Comp. Laws § 211.131(1). Sale proceeds, after deducting costs incurred by the MDNR, are accounted back to the taxing authorities pro rata according to their interests in the land arising from the nonpayment of taxes and special assessments.

whether notice reasonably calculated to reach plaintiffs is sufficient, or whether actual notice is required.

*1. Notice to the Plaintiffs was Statutorily Required under GPTA § 211.131e.*

■ Plaintiffs argue that they were first entitled to notice of the delinquent taxes under Sections 211.57(2) and 211.57(3). Plaintiffs are correct that notice should have been sent out at these times, but they are incorrect to assert that they should have received the notice. As defendants point out, notice was only required under these sections to be sent to the person against whom the taxes were assessed. The plaintiffs have not introduced any evidence that they were the persons against whom the tax was assessed, and the Land Contract specifically provides that the seller was the party responsible for paying taxes, thus implying that the seller would be the person against whom the taxes would be assessed. The plaintiffs therefore were not entitled to notice under Sections 211.57(2) or 211.57(3).

■ Plaintiffs also argue that they were entitled to notice under Section 211.61a of the impending tax sale, and under Section 211.73c of the post-sale redemption provided for in Section 211.74. Sections 61a and 73c provide that notice be sent to persons whose names appear in the County Treasurer's records, and to "occupant" for all parcels for which a street address is known. Plaintiffs have introduced no evidence that their names appeared in the County Treasurer's records, and these records would presumably only contain the names of those against whom the tax is assessed. Therefore, plaintiffs were not entitled to notice under Sections 61a and 73c as persons whose names appeared in the County Treasurer's records. Plaintiffs also contend that they were entitled to receive notice as the "occupant" of Lot 15.[8] Sections 61a(5) and 73c(6), however, both explicitly state that a failure to receive or serve notice does not invalidate the proceedings taken under those sections. Plaintiffs' arguments with respect to Sections 61a and 73c are unavailing.

Plaintiffs further argue that they were entitled to notice under Section 211.131c. Section 131c requires the MDNR to perform an inspection of the land to determine if the land is occupied. If the land appears to be occupied, the MDNR must serve personal notice upon the occupants, or if unable to serve personal notice, to post the property. The MDNR was not, however, under any obligation to serve personal notice on the occupants, as plaintiffs have conceded that Lot 15 was a vacant lot. Section 131c is not clear as to whether the MDNR must post the property if the land appears to be unoccupied. However, we do not need to decide this issue because of the notice requirements of Section 131e, discussed next.

■ Finally, plaintiffs contend that they were entitled to notice under Section 211.131e of the GPTA. Section 131e(1) provides that notice of a show cause hearing on the property must be sent to "owners of a significant property interest."[9] It is clear from the record that plaintiff Sally Sneed, now Sally Howard, had recorded her property interest in Lot 15, and there-

---

**8.** Lot 15 did not have an individual street address, and was conceded by the plaintiffs to be a vacant lot. Nevertheless, it is uncontested that Lots 13, 14, and 15 were collectively known as "234 Alfred," so it is at least arguable that notice should have been sent to that address.

**9.** Section 131e now provides that notice must be sent to "owners of a *recorded* property interest," so "significant" and "recorded" may be synonymous.

fore was entitled to notice at this time. There is no argument by the defendants that Sally Howard's interest was not "significant," nor that she had not provided an address with the county register of deeds. Plaintiff Sally Howard was entitled to notice under Section 131e(1) of the GPTA.

### 2. Actual Notice v. Notice Reasonably Calculated to Apprise the Plaintiffs of Their Rights

■ The second underlying question is whether Sally Howard was entitled to actual notice or whether notice was sufficient if reasonably calculated to reach her. Plaintiffs contend that she was entitled to actual notice of the show cause hearing under Section 211.131e, and advance two arguments in favor of this proposition. First, they argue that the plain language of Section 131e requires actual notice. Section 131e(1), prior to the 1996 amendment, provided that

> the redemption period on those lands deeded to the state pursuant to section 67a that have a state equalized valuation of $1,000.00 or more shall be extended until owners of a significant property interest in the lands have been notified of a hearing before the department of treasury. Proof of notice to those persons and notice of hearing shall be recorded with the register of deeds in the county in which the property is located.

Mich. Comp. Laws § 211.131e(1). The plaintiffs cite several cases in support of their interpretation of this statutory provision: *United States v. Varani,* 780 F.2d 1296, 1304 (6th Cir.1986); *Takacs,* 449 N.W.2d at 702; *Brandon Township v. Tomkow,* 211 Mich.App. 275, 535 N.W.2d 268, 272 (1995); *Standard Federal Savings Bank v. Genesee County,* 208 Mich.App. 569, 528 N.W.2d 793 (1995). The difficulty with this argument is that the Michigan Supreme Court, in a recently decided case

discussing the precise issue of notice under Section 131e, held that notice reasonably calculated to apprise the plaintiffs of their rights was constitutionally sufficient, even when actual notice had not occurred. *Smith v. Cliffs on the Bay Condo. Ass'n.,* 463 Mich. 420, 617 N.W.2d 536, 540–41 (2000). In reaching this conclusion, the court implicitly decided that actual notice is not necessary under Section 131e. Plaintiffs argument based on the plain language of the text must therefore fail.

Second, the plaintiffs assert that the Michigan Supreme Court's decision in *Dow v. Michigan,* 396 Mich. 192, 240 N.W.2d 450 (1976), requires that they receive actual notice of the show cause hearing. In *Dow,* the Michigan Supreme Court ruled that the old statutory procedure for notification of individuals in tax foreclosure proceedings was constitutionally insufficient. *Id.* at 460. The old statutory procedure had provided for notice by publication and notice by mail. *Id.* at 457. The defendants could only prove that notification by publication had taken place, but there was no record of notice by mail. *Id.* The *Dow* court ruled that notice by publication alone was constitutionally insufficient, but that notice by mail was adequate if it was "directed to an address reasonably calculated to reach the person entitled to the notice." *Id.* at 459. The court went on to say: "[i]f the state exerts reasonable efforts, then failure to effectuate actual notice would not preclude foreclosure of the statutory lien and indefeasible vesting of title on expiration of the redemption period." *Id.*

Plaintiffs argue that the efforts undertaken by the state were not reasonable efforts to notify them of the hearing, and that in the absence of reasonable efforts actual notice is required. This argument has some force. The only evidence that the defendants made an attempt to notify the plaintiffs about the hearing is the let-

ter sent to a "Sally Snead" at 8711 Intervale, return receipt requested. This is not an accurate spelling of plaintiff Sally Sneed's last name (now Sally Howard), nor is it the address that was recorded with her deed. Additionally, when the receipt was returned to the defendants it was signed "Sallie Snead," thus containing differences from both the first and the last names of the plaintiff. There is therefore some weight to plaintiffs' assertion that sending a letter to a person with a misspelled name at the wrong address does not amount to efforts "reasonably calculated" to reach that person.

Since the *Dow* decision, however, the Michigan Supreme Court has further addressed the issue of notice in tax foreclosure proceedings in *Cliffs on the Bay*, 617 N.W.2d 536. In *Cliffs on the Bay*, the Michigan Supreme Court upheld the statutory procedure provided for in the GPTA as constitutionally sufficient and ruled that it comported with the requirements set forth in *Dow*. *Id.* at 541. *Cliffs on the Bay* concerned a situation in which the state mailed a notice to the plaintiffs' last listed address in the record of deeds, but that notice was returned as undeliverable. The *Cliffs on the Bay* court ruled that the defendants had complied with the statutory procedure and that the procedure was constitutionally adequate, and that the defendants were therefore not under any obligation to make further efforts to effectuate notice.[10] *Id.* at 542.

Under the holding of *Cliffs on the Bay*, therefore, the defendants must show that they complied with the statutory notice procedures. There is evidence that the defendants complied to the procedure to a certain degree—they sent out a letter giving notice—but it is more questionable whether they fully complied with the statutory procedure, as it does not appear, based on the limited evidence that is available, that they sent the notice to a person or address recorded with the register of deeds. Nevertheless, there is at least some evidence that defendants attempted to comply with the statutory notice requirements.

The defendants are at a distinct disadvantage in proving that they complied with the statutory procedure because of the passage of time. Any proof that the defendants might have of reasonable efforts has been destroyed because of the regular disposal of records after a given period of time. Without these records, the defendants cannot prove that the efforts they made were reasonable, and the only evidence that remains is inconclusive in that it shows that efforts were made, but these might have been unreasonable if sent to the wrong address.

Statutes of limitations were instituted for the very purpose of protecting against these types of concerns. *See Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) ("Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost."); *Order of R.R. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944) ("Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are de-

---

**10.** This was true even though it would have been easy for the defendants to ascertain the plaintiff's new address because it would have been listed with the Corporation and Securities Bureau. *Id.* at 426, 430–31.

signed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."). This case, because of the many years that have passed since the relevant events took place, presents a paradigm example of the importance and necessity of statutes of limitations in our judicial system.

## E. The Applicable Statute of Limitations

The district court found that the statute of limitations most appropriate for this case was that found in Mich. Comp. Laws § 211.431, which provides:

> After the expiration of six months from and after the time when any deed made to the state ... shall have been recorded in the office of the register of deeds for the county in which the land so deeded shall be situated, the title of the state in and to the same shall be deemed to be absolute and complete, and no suit or proceeding shall thereafter be instituted by any person claiming through the original or government title to set aside, vacate or annul the said deed or the title derived thereunder.

Mich. Comp. Laws § 211.431. The district court also held that the statute was tolled until the final redemption period under Section 131e had run. The statute of limitations for this action, according to the district court, therefore expired sometime in 1985.

Although by its terms § 431 would appear to apply, we note that the Michigan Supreme Court did not rely upon it when there was a question as to the constitutional sufficiency of the notice in cases substantially similar to the present appeal. In *Dow*, the court stated in a footnote that the defendant could not rely on Section 431 "to insulate itself from redress if the statutory procedure for tax sales did not meet constitutional requirements." 240 N.W.2d at 452 n. 9. Perhaps more importantly, the *Cliffs on the Bay* court would not have had to reach the question of whether the notice involved was constitutionally sufficient if § 431 barred the action.[11] Given the Michigan Supreme Court's hesitancy to apply § 431 when constitutional issues similar to those in this appeal were involved, we are likewise not inclined to do so.

■ Nevertheless, there is another statute of limitations that requires the dismissal of this case. The latest date upon which this cause of action could have accrued is November 29, 1984, when the State recorded its deed to Lot 15. This is so because upon the recording of the deed the plaintiffs clearly had the right to bring whatever claims they had to the land. Moreover, the recording of the deed is the time when the plaintiffs are put on constructive notice of a contrary claim to the land. Using actual notice as the time of accrual, in contrast, would undermine the purpose of the statute of limitations.[12]

---

11. The *Cliffs on the Bay* court originally remanded the case to the trial court for consideration in light of Section 431 and Footnote 9 of *Dow. People v. Mitchell*, 459 Mich. 924, 589 N.W.2d 779 (Mich.1998). On reconsideration of the remand order, the court vacated the remand. 460 Mich. 867, 599 N.W.2d 101 (1999).

12. The purpose of a recording system is to provide notice of one's interest in a parcel of land. *See Cheatham v. Carter County*, 363 F.2d 582, 585 (6th Cir.1966) ("The purpose of recording and registering deeds is to give the world constructive notice of transfers."). If the plaintiffs had performed a title search prior to accepting the warranty deed from the seller in 1989, they would have known then—before accepting title—that the State had an interest in the land.

The recording of the deed is also the date of accrual under § 431, further confirming that the plaintiffs' claims accrue as of that date.

Therefore, to the extent that plaintiffs are asserting a right to title in the land, this claim is barred by the statute of limitations found in Mich. Comp. Laws § 600.5801, which provides in pertinent part that:

[n]o person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

(2) When the defendant claims title under some deed made by an officer of this state or of the United States who is authorized to make deeds upon the sale of lands for taxes assessed and levied within this state the period of limitation is 10 years.

Since plaintiffs did not bring this action until February 22, 2001, more than 16 years after the recording of the State's deed and 6 years after the statute of limitations ran on November 29, 1994. their claims to title in the land were properly dismissed.

 To the extent that plaintiffs are asserting claims under 42 U.S.C. § 1983 for violation of their personal constitutional rights, these claims are also barred.[13] The statute of limitations applicable to these claims is found in Mich. Comp. Laws § 600.5805(10), which provides that "[t]he period of limitations is 3 years after the time of . . . injury for all other actions to recover damages for . . . injury to a person or property." *See Carroll v. Wilkerson,* 782 F.2d 44, 45 (6th Cir.1986). Any due process violation that might have occurred in this case took place much more than 3 years before plaintiffs filed this action on February 22, 2001.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court dismissing plaintiffs' claims against all defendants.

MOORE, Circuit Judge.

Concurs in result only.

Furthermore, the plaintiffs should have known that something was amiss with Lot 15 when they did not receive a tax bill on the land. Under Michigan law, an owner of land is on notice that a tax will be imposed each year, and the owner fails to pay the tax at his own risk. *See Fisher v. Muller,* 53 Mich.App. 110, 218 N.W.2d 821, 830 (1974) ("every owner of land is chargeable with notice that a tax will be levied on the land each year. This . . . does not mean that a landowner must annually report to the local tax assessing authorities to discover his assessment, but rather that after reasonable notice is made or at least attempted to be made and the taxpayer still neglects or refuses to pay his property taxes, the risk of incurring a state lien on his land and possible tax sale thereof is his to bear.").

13. To the extent that the plaintiffs seek monetary damages under § 1983 from the State of Michigan, this claim fails because "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides v. Bd. of Regents,* 535 U.S. 613, 617, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).